## Chew's Executors *versus* Chew.

Executors, when empowered by the will to sell real estate, may maintain ejectment for it.

Where a testator authorized his executors after they obtained knowledge of the condition of his estate, to convey at their discretion lands to his children as each might select, the children have no estate in the land until it is conveyed to them, and one of them cannot take a tract of the land without the consent of the executors, nor maintain possession against them.

Unless executors act in bad faith in the exercise of the discretionary powers given to them by the will, a court of equity will not control them. And when occasion demands such control, it belongs exclusively to the Orphans' Court.

THIS case came up on a certificate from the *Nisi Prius*.

It was an action of ejectment brought by the executors of the will of Benjamin Chew, deceased, to recover possession of the estate called "Cliveden," situate in or near Germantown, of which Benjamin Chew, a son of the testator, was in possession.

The will, after empowering the executors to sell the real estate of their testator, provided, *inter alia*, as follows:—

"And I do also give, grant to, and invest in my executors or the survivors or survivor of them, full, ample, and complete power, authority, and right, after they have had full time and opportunity to possess themselves of the knowledge of the several parts of my estate, and shall be able on a full view of my affairs to adjust and arrange their reasonable prospects of the product of my estate, and thereby anticipate what may be reasonably expected as the share of each of my children, in case it should be the wish and desire of any or all my children, including those I shall name as executors whose honour I am sure I can trust to for a due impartiality towards themselves or others, instead of waiting for the proceeds of any sale or sales to be made of lands, &c., to take a portion or part of my lands into their own hands at the valuation estimated and affixed by my executors or the survivors or survivor of them, to such portion or part of my lands for the purpose of converting the same to their own immediate objects, to convey and make over to such individual or individuals so desiring the possession and exercise of right over such land to apply the same to their own purposes such portion or part of my said lands as my executors or the survivors or survivor of them may deem expedient, provided always that such individual or individuals shall take and receive the same, as so much paid and advanced to them for and on account of their respective share or shares of my estate, my executors, or the survivors or survivor of them, taking due care and caution that such appropriation of land shall fall short of and may not be likely to exceed the proportion that may be coming to the share of such

[Chew's Executors *v.* Chew.]

individual or individuals, taking care also to consider whether in thus advancing by a conveyance of land any considerable amount to one or more of my children after my decease, in part of their respective shares of my estate more than may be advanced to others, justice may not require some allowance by way of interest or otherwise, to or in favour of those who may not have the same advance contemporaneously on their respective shares; this might be remedied if a certain portion of land was laid off and conveyed to each at certain affixed valuations about the same time, of nearly the same amount to each—a due arrangement on this subject I must leave to the fraternal kind and good consideration and discretion of my executors—and now as respects my whole and entire estate, whether real or personal or both, having directed that my real estate should be sold, except that which I have hereinbefore given, devised, and bequeathed, and under the qualifications hereinbefore expressed, my will is, and I do hereby order, direct, devise, and bequeath, that the proceeds shall be equally divided among my seven children hereinbefore named; and that, as soon as a reasonable sum may be collected, it may be divided and paid over to my said seven children in equal parts, if they shall be living at the time of my decease; but in case any of my said children should die before me leaving a child or children, then such child or children shall succeed to and take such proportion as their parent would have taken, if such parent had been living, regard being had in the payment of the proceeds of the sales or appropriation of land to the state of the accounts, I have hereinbefore mentioned of the advances I have made to my several children; the direction, however, of the sale of my real estate and the division of the proceeds of the sales, is to be subject to the provision hereinbefore made in case any of my said children shall take any land or lands in advance, in part of their portion or share of my estate at the value affixed to the same by my executors or the survivors or survivor of them, in such case the party or parties taking land in advance, must not consider themselves entitled to participate in the proceeds of any sales made by my executors, until the respective shares from the proceeds of sales made by my executors of those who do not take land in advance, may equal the amount of the value of the land of those who do take land."

There was also a provision, that in case any of the devisees should dispute, contest, or litigate any of the testamentary provisions, the devise to such person was revoked.

After the death of the widow of the testator, who had a life estate under the will in " Cliveden," Benjamin Chew, on the 27th March, 1855, was notified by the executors to quit the place.   On the 4th of April he answered that it was his wish to appropriate " Cliveden," under his father's will at a fair valuation.   On April 13th the notice to quit was renewed, and Chew informed that he

[Chew's Executors *v.* Chew.]

had forfeited all interest under the will. On the 19th April Mr. Blackburn was authorized by a power of attorney from the executors to take possession of the premises; possession was refused by the defendant, and this action was brought.

It did not appear on the trial, That the executors had adjusted and arranged the reasonable prospects of the product of the testator's estate, and thereby anticipated what might be reasonably expected to be the share of each child. That the executors had affixed a value or estimate upon Cliveden. That such estimate was less than the defendant's share of the estate; and That the executors had actually conveyed it to him; or, at least, assented in some authentic form to his right to retain it.

The grounds upon which the defendant claimed to retain possession of the land, appear in the following points, upon which he prayed the instruction of the court, viz.:

1. That the executors have no title to any portion of the real estate, except for the purposes of sale.

2. That the devise to sell is subject to the qualification contained in the clause, beginning, " and I do also give, grant to, and invest in my executors, or the survivor or survivors of them, full, ample, and complete power, authority, and right, after," &c.

3. That this qualification creates a condition precedent, in view of which the executors have no power to sell any portion of the real estate, which any of the children may have expressed his wish or desire to appropriate to himself, until they shall have affixed to it a valuation, as the will directs, and given to such child the option so to take it.

4. That the performance of this duty being a condition precedent to the vesting of their estate, and they having refused or neglected to perform it, in pursuance of the plaintiffs' notices to them, of 4th April, A. D. 1855, and of 19th April, 1855, and by which refusal and neglect it has been attempted to defeat his right of election under the will, they cannot sustain this action.

5. That the plaintiffs, not having complied with the provisions of the will, by allowing the defendant to make an appropriation of Cliveden to himself, as he claimed to do by his notices of April 4, and April 19, 1855, cannot sustain this action.

The court (BLACK, J.) charged as follows: " The testator gave the land in dispute to his executors, who are the plaintiffs, for the purpose of being sold. This gave them a right to the possession of it. They may recover it in this action, and hold it subject to the trusts limited in the will, unless the defendant, Ben. Chew, Jr., has a right to retain it, under another provision of the will.

" He says he has such a right, and his assertion is based on the provision of the will, which gives the executors power to value those portions, which any child may desire to appropriate, and convey it to him in satisfaction of his share.

" But I am of the opinion that that provision does not give him a right to retain the premises in dispute. It is not necessary to say whether he can enforce this demand at all. I think it is discretionary; at all events until it is valued and set out, the executors, and not the defendant, have the title and right of possession. " In short, the verdict *must* be for plaintiffs."

The defendant's points were all negatived.

The errors assigned were the answers to the defendant's points, the charge of the court, and the direction to find a verdict for the plaintiffs.

——————, for defendant.—The real estate was devised to be sold, and the proceeds to be divided; those beneficially interested could elect to take the land before actual conversion: Craig *v*. Leslie, 3 *Wheaton* 564, 578; Stuck *v*. Mackey, 4 *W. & S.* 196. The rule that all interested must join, rests upon a due regard for the others who may oppose a reconversion: Trower *v*. Keightley, 6 *Mad*. 135. When this reason does not apply, the court neglect the rule: Seely *v*. Jago, 8 *P. Wms*. 389; Walker *v*. Denne, 2 *Ves. Jr*. 182. By the will of the testator each devisee had the right of election to the extent of his share. If it is optional either with the devisees to allow, or with the executors to make sale, no conversion takes place until sale is made: Bourne *v*. Bourne, 2 *Hare* 35; Clay *v*. Hart, 7 *Dana* 11; Naglee *v*. Ingersoll, 7 *Barr* 185; 1 *Jarm. on Wills* 497. In case of reconversion, the children would take by purchase or as devisees: Morrow *v*. Brenizer, 2 *Rawle* 185; Burr *v*. Sim, 1 *Wh*. 252, 266.

*Munday* and *Williams*, for plaintiffs.—It was left to the discretion of the executors to assign such portions of land as the devisees might elect to take. And unless executors in such case act fraudulently, they will not be controlled even by a court of equity: *Sugd. on Powers*, 1 Am. Ed. 266; 2 *P. Wms*. 93; Reverly *v*. Newland, 2 *Ves*. 87; Miller *v*. Mutch, 8 *Barr* 424. Independent of the terms of the will no child alone could reconvert the land directed to be sold: Craig *v*. Leslie, 3 *Wh*. 564; Willing *v*. Peters, 7 *Barr* 290; Miller *v*. Mutch, 8 *Barr* 417.

The opinion of the court was delivered by

LEWIS, C. J.—This is an action of ejectment brought by the acting executors of Benjamin Chew, deceased, against Benjamin Chew, a son of the testator. The plaintiffs below recovered, and the case comes up to review the instructions given by the judge who tried the cause at Nisi Prius.

The will gives the executors a power to sell the real estate in question. By the operation of the Act of 24th February, 1834,

[Chew's Executors *v.* Chew.]

the executors take the estate in the land as fully as if it had been devised to them to be sold. They may, therefore, maintain eject-ment to recover the possession. The fair construction of the will is that the estate called " Cliveden," now in controversy in this suit, was not to be sold until after the death of the testator's widow, except at her own request. But she died before the com-mencement of this ejectment, and at her decease the estate vested in the executors, discharged of her interest and control. But the defendant below claims to retain the possession of the property, and to " take it" on account of his share of the estate of his late father; and he alleges that it is the duty of the executors to con-vey it to him. It is true that the will gives to the executors the power to convey to any of the children who desire it, such por-tions of the land as the executors may " deem expedient," " taking care that such appropriation of land" shall in each case " fall short of and may not be likely to exceed the proportion" to which the individual receiving it may be entitled. This power was only to be exercised after the executors had " full time and opportunity to possess themselves of the knowledge of the several parts" of the testator's estate, and should " be able, on a full view of" his " affairs, to adjust and arrange their reasonable prospects of the product of the estate, and thereby anticipate what may be reason-ably expected as the share" of each of the children. They have not deemed it expedient to convey the land in controversy to the defendant below, and they assign as the reasons for refusing to convey—that it would amount to much more than the share of either of the children—that other children desire to receive a por-tion of it—that the executors have not such information as would authorize them to convey it to any of the children, the estate being unsettled and the value thereof being unascertained by them —that such distribution is left to their discretion and is not sub-jected to the control of others—and that the defendant below has forfeited his right to any portion of the estate by violating the clause of the will which takes away the legacy from any one who shall " dispute, contest, or litigate any devise, bequest, or other testamentary provision contained in the will."

There is not a single sentence of the will which gives counte-nance to the notion that any one of the children may "*take*" pos-session of any part of the real estate before it is conveyed to him by the executors. The descent is broken by the power to sell and the operation of the Act of 1834. The children have no estate in the land until it is conveyed to them. That conveyance, according to the language of the will, depends upon the discretion of the executors. Where there is no bad faith in the exercise of discretionary powers given to trustees, a court of equity will not, in general, control them: 1 *Sugden on Powers* 341; 2 *Sugden*

[Chew's Executors *v.* Chew.]

511.    But, conceding that their discretion in this case is subject to judicial control, it is very clear that such control must be exercised by the Orphans' Court.    That court has jurisdiction of the settlement of their accounts and the distribution of the assets which may come to their hands, and over all cases where they may be possessed of or are in any way accountable for any real or personal estate of the decedent.    The Orphans' Court may also remove or discharge them according to its own legal discretion. In this case a settlement of the administration account would probably be necessary before the court could come to any enlightened judgment in regard to the manner in which the discretion of the executors had been exercised.    There is no evidence on the record to show what the value of the estate is—how much it is indebted —how much each child is entitled to—and what is the value of the Cliveden estate.    Whether it amounts to more or less than Benjamin Chew will be entitled to, is not shown.    Even if this court could disregard the jurisdiction of the Orphans' Court, and exercise a control over the executors, there is nothing on this record to show that their discretion has been improperly exercised. It is indispensable to the support of the claim of the defendant below that he should show affirmatively that the estate which he desires to retain does not exceed in value the proportion of the whole estate which will fall to his share in the distribution.    This has not been shown.    At least we find no evidence whatever on the subject in the paper-book.    But we decide this case on the ground that the defendant below has no title whatever to the land so long as the executors refuse to convey it to him—and that their discretion on this matter, if subject to judicial control at all, can be controlled by the Orphans' Court alone.    The remedy, if any exist, is within the statutory jurisdiction of that court, and that remedy is exclusive of every other.

Judgment affirmed.