# West Washington Borough *v.* Fouse, Appellant.

*Ejectment—Equitable remedies—Equity—Res adjudicata.*

Where a borough wrongfully enters upon a corner lot for the purpose of widening a street, and judgment is entered against it in an ejectment by the owner, but execution is stayed on a bond being entered to secure the owner in condemnation proceedings, the borough cannot, after having failed to appeal in the ejectment, or to proceed to condemn,

maintain a bill in equity to enjoin the owner from interfering with the use of the lot as a street.

Argued April 22, 1909. Appeal, No. 76, April T., 1909, by defendant, from decree of C. P. Washington Co., No. 1,708, In Equity, on bill in equity in case of West Washington Borough v. J. G. Fouse et al. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Reversed.

Bill in equity for an injunction. Before McILVAINE, P. J.

The facts appear by the opinion of the Superior Court.

The court below entered a decree enjoining the defendant from interfering with the use of the land in controversy as a public street.

*Errors assigned* was the decree of the court.

*R. W. Irwin,* with him *Jas. A. Wiley,* for appellant.

*James P. Eagleson,* with him *G. P. Baker,* for appellee, cited: Richardson v. McKeesport, 18 Pa. Superior Ct. 199; Spring v. Pittsburg, 204 Pa. 530; Farley v. Stokes, 1 Parson's Eq. 422; Penna. R. R. Co. v. Bogert, 209 Pa. 589; Trexler v. Kuntz, 36 Pa. Superior Ct. 352.

OPINION BY HEAD, J., March 3, 1910:

Some time prior to April, 1892, Walker & Fulton were the owners of a tract of one and one-half acres in the plaintiff borough, then recently incorporated. As the tract lay it was bounded on the south by West Chestnut street (formerly the national pike); on the north by Fayette street, both running east and west; on the east by Grove avenue; on the west by Shaw alley, twenty feet wide.

In subdividing this tract into building lots, they ran an alley across it from east to west, perhaps midway between Chestnut and Fayette streets, so that lots could be made to front on both streets. On the southern tier they sold and conveyed to George H. Smith the westernmost lot fronting thirty feet on Chestnut street and extending back along Shaw alley on the west to the new alley in the rear.

Walker & Fulton then conceived that their interests in the

sale of their remaining lots would be advanced if they could have Shaw alley widened to a fifty foot street and Grove avenue, which irregularly cut the lots along their eastern line, vacated. To accomplish this they appear to have entered into two executory agreements, one with George H. Smith, the other with the borough officials. The former was reduced to writing, the latter was not. From the minutes of the council, and perhaps from other evidence produced at the trial, it appears that Walker & Fulton undertook to procure from Smith a conveyance of his thirty foot lot adjoining Shaw alley. Whether they then owned the lot in the rear fronting on Fayette street, or were to secure it from a former purchaser, does not appear. They then offered to grade out this additional thirty foot strip in conformity with the alley and thus convert the alley into a fifty foot wide street, which they agreed to dedicate to the borough. The consideration they were to receive for doing this was the vacation of Grove avenue on the eastern side of their property.

By their agreement with Smith, the owner of the corner lot, they arranged to take the lot next east of his, grade it up to harmonize with the new street they proposed to make by the use of the lot they had already sold him, fence it and lay a boardwalk along the street, and then convey it to him in exchange for the corner lot which he was to surrender up. By their agreement, which was shortly thereafter reduced to writing, and which recited that they had taken possession of his lot for the purpose of making a street, they agreed to do the things already recited, "and then the said Smith agrees to take said lot in exchange for the one taken, the parties of the first part (Walker & Fulton) being at the expense of making both conveyances, the deed to be executed and delivered on the completion of this agreement as aforesaid."

By virtue of these several agreements Walker & Fulton entered upon Smith's lot and proceeded to grade and dispose of it in accordance with their obligation to the borough. The street was thus practically made and thrown open to public travel. The borough without any arrangement whatever with Smith, the owner of the lot, and without any ordinance

laying out and opening a street through his property, appears to have relied on the arrangements made with Walker & Fulton, accepted the offered street, and has since that time improved it, and regarded it as one of the public streets of the borough.

A dispute seems to have shortly arisen be⁺ween Smith and Walker & Fulton as to their compliance with the agreement upon which the exchange of lots was predicated. With the merits of that dispute we do not think we now have any concern, as that entire question has been adjudicated in the proceeding to which we shall shortly refer. As a result of the dispute no exchange of lots was ever effected. Walker & Fulton, although they now allege that they performed their part of the agreement, never had any deeds prepared, as they had agreed to do, never executed a deed for their own lot, never tendered such deed to Smith, and never demanded from him a conveyance. Having failed in these respects to perform the covenants of the agreement binding upon them, they were never in a position to go into a court of equity to demand a specific performance of their contract. Indeed, it would seem from the evidence that, after the original agreement was made, none of the parties took any active steps towards carrying it into execution. In the course of time both acted with their respective lots as if neither owed any duty to the other.

By divers mesne conveyances J. G. Fouse, the present appellant, became vested with the title of George H. Smith to the corner lot already mentioned, and finding the borough in the possession of the lot and claiming the right to retain the same as against him, he brought an action of ejectment in 1905, in the court of common pleas of Washington county, against the borough to try and determine the title and right of possession to the property. The cause proceeded regularly to trial and resulted in a verdict in favor of Fouse upon which judgment was afterwards entered. From that judgment no appeal was ever taken by the borough, and it consequently stands as a final adjudication of all questions then in issue between the parties.

The reasons advanced by the learned trial court in that case for his action in entering judgment on the verdict are thus summed up in his opinion refusing a new trial, which is made a part of the pleadings in the present case. "The borough could have by ordinance condemned this lot for public use as a street and taken it from the owners thereof by paying them such damages as would fairly compensate them, or they could have taken it under an agreement with the owners. They undertook to do this, but dealt only with those who had an equity in the lot under an article of agreement, forgetting that the legal title was the superior title and that the owner thereof should have been consulted. In doing this the borough took the risk of the written agreement being fully carried out or of enforcing its specific performance." Inasmuch, however, as the defendant in that action was a municipal corporation, with the right and power to appropriate the property for public use, and as, under a mistaken claim of right, it had actually entered upon the property and converted it into a street for the use of the public, the learned court, in the exercise of its power to administer equitable relief even in a common-law action, and following the well-known line of decisions of our Supreme Court in like cases, whilst entering judgment for the plaintiff on the verdict, June 24, 1907, granted a stay of execution in the following language: "With stay of execution, provided the defendant pay the costs of suit and within twenty days from this date file in this court . . . . a bond in the penal sum of $500 with, etc., . . . . conditioned to pay to the plaintiff . . . . the damages that may be adjudged him in any legal or equitable proceeding for the occupancy of the lot in dispute by the defendant borough as one of its public streets." The borough paid the costs, filed the bond, but seems to have taken no further steps whatever until August 12 of the same year, when it filed this bill in equity praying that Fouse, the plaintiff in the ejectment and the defendant in the bill, should be permanently enjoined from interfering in any way with the continued use, by the borough, of his lot of ground for a public street. An answer was filed denying the jurisdiction

of a court of equity in the premises and setting up the judgment in the action of ejectment as a conclusive adjudication of the rights of the parties. The cause proceeded to final hearing and a decree was entered enjoining the defendant as prayed for, from which decree this appeal is taken. The foregoing lengthy statement of facts in the cause appears to be necessary to fairly exhibit the anomalous situation of the parties as now presented by the record before us.

In the trial of the action of ejectment the claim of the borough that it was in lawful possession of the ground demanded by Fouse was presented for adjudication to a tribunal which had complete jurisdiction both of the parties and the subject-matter, and which, from the most ancient days, has been deemed best equipped to try and determine disputed questions concerning the title to or right of possession of land. In that action, as in every other similar one, the plaintiff had to bear the burden resulting from the principle that he must recover, if at all, on the strength of his own title. The defendant had the right to rely not merely on a superior title in itself, if such could be shown, but upon any outstanding title in any other which would show that the plaintiff's claim was without solid foundation. That such a court too, in the trial of an action of ejectment, may exercise equitable powers and recognize and enforce equitable rights and estates, as distinguished from those purely legal, cannot be denied. Indeed, in that very trial the court, without complaint, exercised such power in withholding from the plaintiff the fruits of his legal victory until the defendant could have an opportunity to do what it had the power to have done in the beginning, to wit, appropriate the property for public use, leaving the ascertainment of the amount of the damages and the persons to whom they might accrue for future determination under the laws of the commonwealth.

As already stated, the defendant in that action appears to have acquiesced in the judgment in which it resulted, because no appeal therefrom has ever been taken, nor has the borough taken advantage of the opportunity afforded it to begin condemnation proceedings in the manner provided by law.

Having thus had a solemn judicial determination that the right of Fouse to the possession of his lot still remained superior to any possessory right which it could advance by virtue of the facts above stated, the borough filed this bill and goes into the equity side of the same court and asks a chancellor, upon the same facts, to restrain by injunction the plaintiff from the enjoyment of the possession of his property, which by the verdict of the jury and the judgment of the court thereon had been determined to be rightfully his. No authority has been advanced, none we believe can be, in support of such an anomalous procedure. If the decree in this case can be sustained, the judgment in the time-honored action of ejectment, instead of determining the right of possession, would be but the beginning of a new contest in a court of equity to retry the same questions with the hope that a different conclusion might be reached. To such a theory of the law we are unable to give our sanction.

The fallacy of the argument of the learned counsel for the appellee clearly appears, we think, in his own interpretation of the effect of the judgment in the ejectment case. After quoting the condition imposed by the court when entering the judgment, the printed brief contains the following: "This condition does not mean, as the counsel for the appellant interprets it, that the borough must proceed to condemn this lot for a public street, but said condition plainly states that the stay of execution is given for the purpose of allowing the parties to determine their rights, either by legal or equitable proceedings. The borough of West Washington, the defendant in said ejectment suit, in accordance with said conditional verdict, chose to determine its rights in an equitable proceeding and filed the bill in this case." In other words, say counsel, the trial at law determined nothing, and the resulting verdict and judgment left the parties where it found them, with the alleged rights of the borough in no way affected by the adverse judgment, although it had been entered by a court having full jurisdiction of both parties and subject-matter, after an investigation of all of the matters on which its present bill is rested. Even when the law re-

quired two successive verdicts and judgments in ejectment to finally determine the title to land, the first judgment had much more significance than we are urged to attach to the one now under consideration. Since the passage of the Act of May 8, 1901, P. L. 142, which declares that one verdict in ejectment "and judgment thereon shall be final and conclusive and bar the right," the contention of the appellee seems to us to be wholly untenable.

Without attempting to further elaborate our views, we deem it sufficient to say that we are of the opinion that the plaintiff in the present appeal has exhibited no equity whatever, and that the decree entered by the learned court below must therefore be set aside.

Decree reversed and bill dismissed at the cost of the appellee.