## Kellner, Executor, v. Stahl.

*Ejectment—Conclusiveness of judgment—Act of May 8, 1901.*

1. Under the Act of May 8, 1901, P. L. 142, a judgment on a verdict in ejectment, from which no appeal has been taken, is final and conclusive, although the trial judge excluded evidence, possibly erroneously, that a will, duly admitted to probate, upon which one of the parties based his claim, was invalid; in such case, the remedy of the party injuriously affected by the ruling is by appeal.

*Partition in equity—Party's right, prior to decree in partition being granted, to have validity of testamentary power determined.*

2. A defendant to a bill in partition has a right, prior to a decree in partition being granted, to have the question determined whether or not the power and direction to sell given to the plaintiff in the will of the decedent has been destroyed by the alleged fact that legacies in the will fell under the terms of the Act of April 26, 1855, P. L. 328, that being the act applicable, as the will was executed before the passage of later acts.

*Gifts to charities—Cemeteries—Masonic lodges—Hospitals—Act of April 26, 1855.*

3. A cemetery company is not a charity within the meaning of the Act of April 26, 1855, § 11, P. L. 328.

4. Hospitals and Masonic homes cannot be assumed to be charities as a deduction from their titles.

5. Where a will stands duly probated, no duty rests upon the alleged charitable legatees to show affirmatively that they are not charities or that the will was executed in compliance with the provisions of the act of assembly applicable.

6. Kensington Lodge, No. 211, Free and Accepted Masons, the essential purposes of the organization being for fellowship and, as incident thereto, to maintain a committee on charity, whose activities are confined to members of the lodge and their families, is not a charity.

*Partition in equity—Lis pendens—Party's right to proceed.*

7. A plaintiff in partition is not barred of his right to maintain the bill, because of the fact that there is pending another bill in equity brought by him to have the defendant declared a trustee for a part of the land in the partition proceedings which he, the plaintiff, claims; in other words, merely because a part of the ownership is in dispute between the parties in litigation in partition, is no reason why partition should not be proceeded with and the plaintiff awarded such proportion as admittedly belongs to him, leaving the part in dispute to be reserved pending the disposition of the other equity proceedings.

Bill, answer, replication and proofs. C. P. No. 2, Phila. Co., Dec. T., 1923, No. 3534, in Equity.

The history of this litigation will be found in Kellner, Executor, *v.* Stahl, 3 D. & C. 389.

*Francis V. Godfrey, James R. Wilson* and *William J. Wilson,* for plaintiff.

*John W. Speckman* and *Frederick J. Knaus,* for defendant.

STERN, J., June 15, 1925.—This is a bill in equity praying for a decree of partition for premises No. 1208 Palmer Street and Nos. 446 to 458 (inclusive) Flora Street, Philadelphia, and also for a reference of the cause to a master to make such partition. On bill, answer, replication and proofs, the court makes the following findings of fact and states the following conclusions of law:

*Findings of fact.*

1. Mary Maier was in her lifetime seised in fee simple of the following described premises:

All those eight certain lots or pieces of ground, with the buildings and improvements thereon erected, etc. . . . Being known as No. 1208 Palmer Street and Nos. 446 to 458, inclusive, Flora street. . . .

2. Mary Maier being so thereof seised died on July 9, 1913, having first made and published her last will and testament in writing bearing date Jan. 30, 1908, duly probated at Philadelphia on April 14, 1920, and registered in Will Book No. 424, page 267. . . .

3. In and by the said will of Mary Maier she did bequeath the following legacies and devises:

*(a)* To the North Cedar Hill Cemetery Company In Trust $200, to apply the income thereof to the perpetual care of decedent's lot in said cemetery. . .

*(b)* To Kensington Lodge No. 211 F. & A. M. Pa. $2500, free of collateral inheritance tax, to be applied to the New Temple Building Fund of said Lodge.

*(c)* German Hospital $1000.

*(d)* Roosevelt Hospital $500,

*(e)* Wilhelmina Donal 1210 Palmer Street.

*(f)* Elmira L. Wood 1212 Palmer Street.

*(g)* Residue to the Masonic Home of Pennsylvania. . . .

By the said will the said Mary Maier did order and direct her executors to sell all her real estate except premises Nos. 1210 and 1212 Palmer Street, and make the necessary deeds, and she did appoint Henry C. F. Kellner and C. Wesley Ruffell executors of her said will.

4. On April 14, 1920, the said C. Wesley Ruffell renounced his right to act as executor, whereupon the Register of Wills for the County of Philadelphia did on the same day grant letters testamentary unto the said Henry C. F. Kellner, executor as aforesaid.

5. The heirs of Mary Maier, had she died intestate, were three nephews, Karl Friederich Stahl, Johann Wilhelm Stahl and the defendant, Gustav Albert Stahl, these three being brothers.

6. The said will of Mary Maier was executed in the presence of two subscribing witnesses, William D. Clouds and John P. Blatz, the former of whom has since died.

7. These two subscribing witnesses were, at the time of the execution of the said will of Mary Maier, members of Kensington Lodge No. 211, Free and Accepted Masons, which is a legatee to the extent of $2500 under the said will.

8. Kensington Lodge, No. 211, F. & A. M., is a subordinate lodge of the Grand Lodge of Pennsylvania, F. & A. M. It is not engaged in commercial business of any kind, neither is it a beneficial society, but its essential purpose is fellowship within the rules and regulations of the fraternity and according to its ancient usages and customs. Its revenue is derived from dues regularly paid to it by its members.

9. The said lodge, under its by-laws, has a committee on charity, consisting of three members, to whom should be referred all petitions for charity after being read in open lodge, and it was the duty of such committee to determine whether such applicant was worthy to receive charity from the lodge, and, if so, the committee might request the worshipful master to draw orders on the treasurer for such sum as might be granted by the lodge.

10. The books of the lodge show that during the year 1908 (the year of Mary Maier's will) its total disbursements were $6986.97, of which $398.15 were disbursed for charity.

11. No member of the lodge has a right to demand any financial relief. Where any relief is granted, it is confined to members of the lodge and their families.

12. The said lodge was not, at the time of the execution of the said will of Mary Maier, and never has been, a charity or an organization for religious or charitable uses.

13. The defendant has stated his willingness, as far as the legacy to the North Cedar Hill Cemetery Company is concerned, to pay the amount of said legacy to the company, and since 1913 he has paid for the care of said lot, although no definite agreement has been entered into between him and the cemetery company to that effect.

14. Prior to the probate of the said will of Mary Maier, the said Karl Friederich Stahl and Lena, his wife, and Johann Wilhelm Stahl, by indenture dated June 7, 1915, and recorded at Philadelphia on July 28, 1915, in Deed Book E. L. T., No. 497, page 457, did grant and convey, *inter alia*, all their (supposed) undivided two-thirds interest of, in and to the premises described in finding No. 1 hereof to the defendant, his heirs and assigns, the consideration being mentioned therein as one dollar, but the real consideration being the sum of $9000. The defendant purchased said interest in good faith and without notice of the existence of the said will of Mary Maier.

15. For the purpose of raising the said consideration money of $9000, the defendant applied to the Philadelphia Company for Guaranteeing Mortgages for a loan of $9000, to be secured, *inter alia*, upon the said premises, and by indenture of mortgage dated July 27, 1915, and recorded July 28, 1915, in Mortgage Book E. L. T., No. 826, page 329, mortgaged the said premises, *inter alia*, to the said Philadelphia Company for Guaranteeing Mortgages in said amount. The execution of said mortgage was simultaneous with the delivery of the deed mentioned in finding No. 14 hereof, and the money raised upon the said mortgage was paid by the defendant to the said Karl Friederich Stahl and Johann Wilhelm Stahl in purchase of their (supposed) two-thirds interest in said premises.

16. The defendant, by indenture bearing date Aug. 30, 1915, and recorded on Sept. 1, 1915, in Mortgage Book E. L. T., No. 826, page 439, &c., mortgaged the said premises, *inter alia*, to the Canstatter Building Association to secure payment of the sum of $5000.

17. The plaintiff, on April 20, 1920, instituted an action in ejectment against the defendant as of C. P. No. 2, March Term, 1920, No. 4880. The defendant filed a plea, answer and abstract of title in said ejectment proceeding, denying the right of plaintiff to possession of said premises and denying his right, title or interest in said premises.

18. Upon the trial of the said ejectment suit, the trial judge ruled that the question of the validity of the will of Mary Maier as to the dispositions to charities was not one to be passed upon or to be determined in that action, and the trial judge ruled that such question could be raised only when it came to the question of the distribution of the decedent's estate.

19. The said ejectment suit was so proceeded in that a verdict was rendered in favor of plaintiff, executor as aforesaid, for a one-third interest in the said premises described in finding No. 1 hereof. On March 14, 1923, a motion for judgment *n. o. v.* was filed by the defendant, which motion, on June 14, 1923, was overruled by the said court in an opinion reported in 3 D. & C. 389. On Nov. 15, 1923, a writ of *habere facias possessionem* was issued by the said Court of Common Pleas in the aforesaid proceeding, by virtue of which the possession of one-third of the said premises was duly delivered by the Sheriff of the County of Philadelphia to the plaintiff.

20. On Dec. 22, 1923, a bill in equity was filed by the plaintiff against the defendant as of Common Pleas No. 2, December Term, 1923, No. 3533, setting

forth, *inter alia,* the aforesaid facts and praying that the defendant be declared a trustee for a one-third of two-thirds or a two-ninths interest in the aforesaid premises for the benefit, use and behoof of plaintiff as executor of the will of Mary Maier, and that the defendant be directed to account for the rents, issues and profits and be directed to grant and convey said two-ninths interest in said premises to the plaintiff as such executor. The said resulting trust was alleged to have arisen by reason of the purchase of the two-thirds interest, as set forth in findings Nos. 15 and 16 hereof, with moneys raised by mortgages of, *inter alia,* plaintiff's one-third interest in the aforesaid premises. The said proceeding is still pending and undetermined.

21. The said premises are vested in the following persons and in the following proportions, to wit: Henry C. F. Kellner, executor of the will of Mary Maier, deceased, three-ninths thereof; Gustav Albert Stahl four-ninths thereof; the determination of the remaining two-ninths interest depends upon the result of the equity proceeding brought by the plaintiff against the defendant and referred to in finding No. 20 hereof.

22. A partition of the said premises has been demanded by plaintiff, but defendant has refused and still refuses to comply therewith.

*Conclusions of law.*

1. The legacy of $200, given by the will of Mary Maier to the North Cedar Hill Cemetery Company, is not paid nor released.

2. The bequest of $2500 to the Kensington Lodge, No. 211, F. & A. M., to be applied to the New Temple Building Fund of said lodge, was not a gift for religious or charitable uses.

3. The Kensington Lodge, No. 211, F. & A. M., was not at the time of the making of the will of Mary Maier, and never has been, a charity or a body politic or an organization for religious or charitable uses.

4. The will of Mary Maier was attested by two credible and, at the time, disinterested witnesses, within the meaning of the Act of April 26, 1855, § 11, P. L. 328.

5. The premises which are the subject of the present bill in partition are vested in the following persons and in the following proportions, to wit: Henry C. F. Kellner, executor of the will of Mary Maier, deceased, three-ninths thereof; Gustav Albert Stahl, four-ninths thereof; the determination of the remaining two-ninths interest depends upon the result of the equity proceeding brought by the plaintiff against the defendant, and referred to in finding No. 20 hereof.

6. The fact that a part interest is thus in dispute between the parties, and that its determination depends upon other proceedings in equity, does not bar the plaintiff from proceeding with this bill or from being awarded partition hereunder.

7. Henry C. F. Kellner, executor of the will of Mary Maier, deceased, is, under the power and direction to sell contained in decedent's will, entitled to partition of the real estate which is the subject of the present bill.

8. A proper decree for partition of said premises should be entered in this case and the cause be referred to a master.

*Discussion.*

Several questions involved in the controversy have been presented to the chancellor for consideration and decision.

1. It is strenuously urged by the plaintiff, and as vigorously denied by the defendant, that the ejectment proceedings brought in this court, as of March Term, 1920, No. 4880, by the plaintiff against the defendant, are *res adjudi-*

*cata* as to the present controversy, and, therefore, prevent the latter from raising the questions now urged by him. The defendant argues that an action of ejectment is in its nature possessory only, that it does not determine title to land, and that, therefore, he is free to insist that the plaintiff has no title to the lands here involved, and, accordingly, cannot maintain this bill for partition.

It is true that, generally speaking, an action in ejectment goes only to the question of possession and not to that of title, and that at common law a verdict and judgment in ejectment were not *res adjudicata,* but that, on the contrary, any number of such actions between the same parties might be successively brought. The reason of this anomaly in the law is pointed out in Stevens *v.* Hughes, 31 Pa. 381, where it is shown that the inconclusiveness of a judgment in ejectment is due, not to the character of the subject-matter of the controversy, but merely to the form of the action. Originally such cases were brought upon the basis of an alleged existing lease, the plaintiff being the alleged lessee, and the recovery sought, therefore, was only of a term and not of the freehold. The plaintiff was a fictitious person, and, as the demise might be laid in any number of ways, it never could appear that the second ejectment was for the same thing as the first; indeed, the second ejectment supposed a new demise. Such being the original nature of the action, any number of successive ejectments could be brought and the tenant in possession could never protect himself by the result of a former trial. This situation existed in this State until the passage of the Act of April 13, 1807, § 4, 4 Sm. Laws, 476, which provided that two successive verdicts and judgments for a party in ejectment should be a final bar to subsequent actions between the same parties. This law was in effect until a new act was passed, nearly a century later, on May 8, 1901, § 1, P. L. 142, which provided that where a judgment is entered on a verdict obtained in any action of ejectment, no new ejectment should be brought between the same parties, but the one verdict and judgment thereon should be final and conclusive and bar the right. Nowadays, the old style of bringing ejectment by a fictitious lessee-plaintiff has been discontinued, and under present practice, in accordance with the act last above cited, a judgment in ejectment is just as conclusive as to all matters thereby determined, or the determination of which was necessary to justify the judgment, as is any other judgment in a similar action: Gould *v.* Randal, 232 Pa. 612, 614; Stearns Co. *v.* Hewes, 256 Pa. 577, 582; West Washington Borough *v.* Fouse, 41 Pa. Superior Ct. 462, 468; Shaffer *v.* Lauria, 64 Pa. Superior Ct. 265.

In Lloyd's Estate, 281 Pa. 379, it was said that: "It must be determined first whether the Orphans' Court has jurisdiction to award partition, in view of the dispute as to the ownership of any interest in the land. Ordinarily, where the controversy is over a legal title, as distinguished from an equitable one (Hayes's Appeal, 123 Pa. 110, 132), a person not in possession, or having the potential right thereto, cannot obtain such a decree until his rights have been determined by an action in ejectment (Eell's Estate, 6 Pa. 457; Hayes's Appeal, 123 Pa. 110) if a real and substantial contention as to his claim is shown by both the pleadings and the evidence presented. Under such circumstances, further action in the Orphans' Court or court of equity will be stayed until the question involved can be determined in a court of law: Earle *v.* D., L. & W. R. R. Co., 270 Pa. 152; Bishop's Estate, 200 Pa. 598; Longwell *v.* Bentley, 23 Pa. 99; Law *v.* Patterson, 1 W. & S. 184."

Indeed, the defendant's contention would result in *a reductio ad absurdum,* namely, that a bill in equity concerning title would not lie unless first an action in ejectment were brought to determine the title, but such an action in

ejectment would not determine the title, and, therefore, a subsequent bill in equity could not be maintained. Such a contention answers itself.

It is, however, pointed out by defendant that in the ejectment proceedings brought in this court the defendant sought to introduce the evidence presented in the present action as to the legatees named in Mary Maier's will being charities; that the plaintiff objected to the introduction of such evidence, claiming that that was a matter for future determination in the Orphans' Court upon distribution of the estate, and that the trial judge adopted this view and held that the matter sought to be presented was not at issue in the ejectment proceedings. It is now argued by defendant, therefore, that the ejectment proceedings cannot be *res adjudicata* as to a matter which was expressly ruled out by the trial judge at the request of the plaintiff. The plaintiff, on the other hand, contends that if error was committed by the trial judge in ruling out the matter sought to be presented by the defendant, the remedy of the latter was to appeal from the judgment.

It is to be noted that there is no inconsistency in the position taken by the plaintiff at the trial of the ejectment cause and that now assumed by him. He contended then, and still contends, that the question as to whether or not any of the legatees is a charity must be relegated to proceedings in the Orphans' Court upon distribution of the estate. Therefore, there is no question here involved as to the application of the doctrine of estoppel, resulting from a party attempting to assume a position inconsistent with that assumed by him in prior litigation.

It is true that "the general rule is that a matter not decided and not necessarily determined by the judgment is not concluded, though put in issue by the pleadings, especially where the matter pleaded was not actually litigated—that is, supported or attacked by evidence, made the subject of the trial, submitted to the jury or pressed upon the consideration of the court. And for stronger reasons is this true where the judgment expressly reserves the question or declares that it was not in issue:" 34 Corpus Juris, 930, 931. The chancellor, however, is of the opinion that this principle is scarcely applicable to the present case, inasmuch as all that the trial judge in the ejectment cause did was to exclude certain evidence as being, in his opinion, irrelevant to the issue, and even if he thereby committed error, it would seem that the proper remedy of the defendant was to appeal from the resulting judgment in ejectment and to secure its reversal by an appellate court. In case, however, the chancellor is mistaken in this view of the matter, the merits of the defendant's other contentions will now be examined.

2. The chancellor is inclined to the view that the defendant has a right, prior to a decree in partition being granted, to have the question determined as to whether or not the power and direction to sell given to the plaintiff in the will of the decedent have been destroyed by the alleged fact that the legacies in the will fall beneath the terms of the Act of April 26, 1855, P. L. 328. To hold otherwise would lead to the result that the real estate might be sold in partition and converted into cash, so that, even if the defendant subsequently convinced the Orphans' Court that the gifts to charity were void, his victory would be impaired by the fact that his real estate might have been sold against his will and he might be forced to participate in a distribution of money instead of receiving the realty in kind. It is, of course, admitted by the defendant that ordinarily an executor with power and direction to sell takes an estate in the land as fully as if it had been devised to him to be sold, and, accordingly, has title to maintain an action in ejectment or a bill in equity such as the present one, and this is, indeed, well settled: Chew's Exec-

utors v. Chew, 28 Pa. 17; Manzer v. Wycoff, 78 Pa. Superior Ct. 560, 565; Power v. Grogan, 232 Pa. 387, 397. On the other hand, it is equally well settled that if the real estate is to be sold by the executor merely in order to divide the proceeds among charitable institutions, and if for any reason the bequests to such charities are void, the power to sell becomes inoperative, the land descends to the testator's heirs-at-law, and thereby the right of the executor to bring ejectment or a bill in equity to assert title or control over the real estate would be lost: Luffberry's Appeal, 125 Pa. 513; Patterson v. Reed, 260 Pa. 319, 323.

3. We thus come to the next question, and that is whether or not the bequests in the will are to charities and, therefore, inoperative under the Act of April 26, 1855, § 11, P. L. 328 (subsequent acts are not applicable because Mary Maier's will was made before their passage and, therefore, remains unaffected by them: Leech's Estate, 236 Pa. 57). It is contended by defendant that the two witnesses to the will, William D. Clouds and John P. Blatz, were at the time of the execution of the will active members of Kensington Lodge, No. 211, Free and Accepted Masons; that this lodge is a charity; that, therefore, the two witnesses in question were not disinterested, and that, accordingly, all of the bequests to charitable institutions fall because of the doctrine enunciated in Kessler's Estate, 221 Pa. 314.

We note, in the first place, that the legacy to the Cedar Hill Cemetery Company is not to a charity and, therefore, it is not clear how it is affected and why it alone would not be sufficient to preserve the plaintiff's power of sale. We further note that the defendant offered no evidence whatever as to whether or not the remaining legatees, other than the Kensington Lodge, namely the German Hospital, Roosevelt Hospital and the Masonic Home of Pennsylvania are charities, and the chancellor should not assume that they are by reason of any such likelihood to be deduced from their mere titles. If any one or more of these institutions is not a charity, the bequest as to it or them would be valid, and the plaintiff, therefore, would have the right and the duty to sell the decedent's real estate in order to pay such legacies, and, therefore, would have had sufficient title to maintain his previous action in ejectment and now to maintain the present bill in equity. The will stands duly probated and no duty rests upon alleged charitable legatees to show affirmatively that they are not charities or that the will was executed in compliance with the provisions of the Act of April 26, 1855: Amberson's Estate, 204 Pa. 397.

However, returning to the question of the alleged disqualification of the witnesses to the will, it is pointed out in Channon's Estate, 266 Pa. 417, that Kessler's Estate, 221 Pa. 314, disqualified a witness as being interested only if his interest was as legatee or devisee under the will, or where he was to derive a pecuniary benefit or advantage from any part of it, or where he was interested at the time of attestation in a religious or charitable institution to be benefited thereby. And it was further pointed out and ruled that if the institution in which he was "interested" was not a charitable one, he did not fall within that prohibited class of those enumerated in Kessler's Estate. Therefore, the question comes down finally to the inquiry as to whether or not the Kensington Lodge is a charitable institution. If it is, the subscribing witnesses were not disinterested and the gifts to charity fall; if, on the other hand, the lodge is not a charity, the witnesses were disinterested when they attested the will and the Act of 1855 has no application.

4. We proceed, therefore, to consider the merits of the question as to whether or not the Kensington Lodge, No. 211, Free and Accepted Masons, is a charity, or, rather, whether it was one when the decedent's will was executed, although it may be said at once that there was no evidence presented

as to any change in the lodge which makes the question of the time at which the inquiry is directed of any importance.

There are many cases, ranging throughout the various state jurisdictions, bearing upon the question as to whether or not a Masonic lodge is a charity. These cases must be carefully analyzed before being accepted as authorities, inasmuch as the question is raised in various ways and upon various statements of fact—sometimes on the construction of state statutes exempting certain institutions from the payment of taxes, sometimes under circumstances which necessitate a distinction being made between public and private charities, sometimes on demurrers which admit decisive facts set forth in the pleadings, and sometimes under specific evidence as to the particular by-laws or practices of a given lodge. It is not our intention to review these cases in detail, because a reading of them discloses to the satisfaction of the chancellor that none of them is conclusive and few of them persuasive. Those that are perhaps more directly in point than others and that lean in the direction of holding that Masonic lodges are charities are Cumberland Lodge *v.* Nashville, 127 Tenn. 248; Plattsmouth Lodge *v.* Cass County, 79 Neb. 463; City of Savannah *v.* Solomon's Lodge, 53 Ga. 93; City of Newport *v.* Masonic Temple Ass'n, 108 Ky. 333; City of Indianapolis *v.* Grand Lodge of Indiana, 25 Ind. 518; State ex rel. Bertel *v.* Board of Assessors, 34 La. Ann. 574. On the other hand, the two best reasoned cases which hold *contra* are Mason *v.* Perry, 22 R. I. 475, and City of Bangor *v.* Rising Virtue Lodge, 73 Me. 428, each of which reviews and answers many of the conflicting authorities.

In Pennsylvania, the only cases which apparently throw any light upon the question are Babb *v.* Reed, 5 Rawle, 151; Swift's Exec'rs *v.* Beneficial Society of Easton, 73 Pa. 362, and Sharp's Estate, 71 Pa. Superior Ct. 34. These hold, in effect, that an association for the purpose of mutual benevolence among its members *only* is not one for *charitable* uses. In the first named case, it was held that a lodge of the Independent Order of Odd Fellows was not a charitable use under the common law of Pennsylvania or the statute 43 Elizabeth. The last named case held that legacies to the Old Men's Home of Odd Fellows and similar institutions were not bequests for a charitable use within the meaning of the 11th section of the Act of April 26, 1855.

Coming down to the testimony in the present case, all that was shown in regard to the Kensington Lodge was that there were regular dues which had to be paid to the lodge by its members, that the essential purpose of the lodge was fellowship, that is, to initiate men in the fraternity and to make them free masons according to its ancient usages and customs. It was further shown that it is customary for some Masonic lodges, and that it was the case with the Kensington Lodge, to have a committee on charity. The so-called "charity" was confined to members of the lodge and their families, and in the year 1908, which was the date of the decedent's will, the total receipts of the lodge were $6447.59, the disbursements $6986.97, and the only amount that went to the charity committee $398.15—a practically negligible percentage.

Under such evidence it is not believed that the lodge can be said to constitute a charity. Both in theory and practice, the giving of any money for that purpose was obviously a decidedly minor feature of the work of the lodge. The mere fact that it may have given a few hundred dollars to charity does not make it a charity any more than if a bank, a factory or a department store, now and then, should give money out of its treasury for charitable purposes such institution would thereby itself become a charitable institution. In other words, this lodge, or any other institution, had the same right occasionally to donate money for charitable purposes as any individual would

have. But where, as in this case, such expenditure is merely occasional and incidental to the main purpose, where there is no fixed or definite provision for it, and particularly where the small amount given is confined to the lodge's own members and their families, it is not conceived that such an institution could properly be held to be a charity within the meaning of the Act of 1855.

It may be added that the testatrix in her will did not make the bequest of $2500 to the lodge for charitable work, but, on the contrary, the gift was expressly stated to be for the "New Temple Building Fund of said lodge," and this provision removes the legacy even further from the minor charity features of the lodge.

On the whole, therefore, we conclude that, as far as the evidence in this case demonstrates, the Kensington Lodge, No. 211, F. & A. M., is not a charity or an organization for charitable uses, that the legacy to it is valid and supports the plaintiff's power and duty to sell, and that the witnesses to the will were not interested witnesses rendering the charitable bequests void.

5. There remains only to consider the contention of the defendant that the plaintiff is barred of his right to maintain the present bill because of the fact that there is pending another bill in equity brought by the plaintiff to have the defendant declared a trustee for a two-ninths interest in the premises, which the plaintiff claims in addition to the one-third interest for which he obtained judgment in the ejectment proceedings. The defendant asserts that in order to have partition allotted, the plaintiff must have a definite and fixed interest. The plaintiff, on the other hand, contends that, merely because part of the ownership is in dispute between the parties, there is no reason why partition should not be proceeded with and the plaintiff awarded such proportion as admittedly belongs to him, leaving the two-ninths interest which is in dispute to be reserved pending the disposition of the other equity proceedings.

It is believed that the authorities on this point are with the plaintiff.

In Phelps *v.* Green, 3 Johnson's Chancery (N. Y.), 302, the plaintiff was entitled to one-half of the property in fee, there being a dispute between the defendants as to the other moiety, some of the defendants being in possession and claiming the same and other defendants being out of possession, but also claiming the same. Notwithstanding the fact that the shares were not fixed and determined, the court (Chancellor Kent) awarded partition in favor of the plaintiff as to a one-half, and gave leave to the defendants to apply for a further partition of their moiety when their conflicting claims were adjusted.

In Union Trust Co., Trustee, *v.* Whittaker, 32 Pitts. L. J., N. S., 443, the plaintiff, in a bill in equity for a partition, was entitled to a one-third interest in the property in fee, but there was a dispute among the defendants as to the ownership of the remaining interest in the property. The court followed the decision in Phelps *v.* Green, 3 Johnson's Chancery (N. Y.), 302, and directed a partition between the plaintiff owning the one-third and the defendants owning together the two-thirds, so that the plaintiff might have its share set apart in severalty, leaving the respective interests of the defendants among themselves to be afterwards determined.

In Old Man's Home *v.* Pennsylvania Institution for the Instruction of the Blind, 17 W. N. C. 171, upon facts similar to those in the two previous cases discussed, the court adopted the same principle as therein laid down.

In Sill *v.* Blaney, 159 Pa. 264, there was a bill in equity filed for partition. The state of the title was uncertain, as it depended upon the construction of a will. The court below dismissed the bill, saying: "Though partition may

be made upon petition of one holding an equitable interest or limited estate, we find no authority for sustaining the action of one having an uncertain interest." The Supreme Court, however, reversed, holding that, while "It is true that a bill for partition cannot be successfully resorted to for the purpose of determining a disputed title," nevertheless, since all parties in interest had been joined in the action, there was no such uncertainty as to defeat partition, stating that: "The appellants are in possession of this land, and if a doubt as alleged in regard to their title is permitted to operate to defer partition until it is settled by an action at law, the delay would be indefinite and its effect would practically bar partition. Such a doubt, if existing, may, however, be determined in these proceedings for partition. . . . The bill sufficiently avers title in the heirs of Jesse Sill, deceased, in one-half of the land for its severance from the half owned by appellee Smith. Such partition can be made and the one-half thus held, or the proceeds of the same, in case a sale should be necessary, can be decreed to be held aggregately, as in Phelps *v.* Green, 3 John. Ch. 302."

In the present case the plaintiff has established his title in regard to one-third interest in the premises. If the pending equity proceedings as to the two-ninths interest are not determined by the time the present proceedings are concluded, such interest, or the proceeds of it, can be held apart awaiting such determination. But neither on principle nor authority would there seem to be any reason for denying to the plaintiff the right to partition merely because his claim of interest is not admitted to its full extent.

Summarizing, therefore, the issues presented by the parties, the chancellor is of opinion that the ejectment proceedings are *res adjudicata* as to the plaintiff's right, but that, if this conclusion be erroneous, nevertheless, the defendant has not shown that all of the bequests are charities so as to deprive the plaintiff of his right to maintain the present bill; furthermore, that the lodge, of which the two subscribing witnesses were members, is not a charity; that they are, therefore, not interested witnesses within the meaning of the Act of 1855; that the charitable legacies are accordingly valid; that the power and duty of the executor to sell the real estate exist and he has the right to obtain a partition of the premises, and, finally, that the mere fact that in other pending proceedings he is claiming an additional interest does not bar or defer his right to proceed with the present bill.

The chancellor, therefore, enters the following

*Decree.*

And now, to wit, June 15, 1925, this cause having some on to be heard on bill, answer, replication and proofs, it is ordered, adjudged and decreed:

1. That partition be made of the real estate, hereditaments and premises described in the first paragraph of the plaintiff's bill.

2. That the cause be and it is hereby referred to David Werner Amram, Esq., as master in partition, to value the said real estate and divide and partition the same into shares and purparts according to the shares and interests of the respective parties thereto, if the same can be divided without prejudice to or spoiling the whole thereof, and to ascertain the sum or sums which shall be paid or charged thereon for owelty, or which shall be paid or secured to the parties to whom no purparts may be allotted, in the manner now authorized by law under writs of partition at common law.

And if the master shall find that such partition and division can be made of the whole of the said real estate or of any part thereof, then, upon such valuation and partition, to award and allot the said purparts to and among

the parties severally and respectively entitled thereto, together with the sums so charged thereon and payable as and for owelty of partition.

And if the said real estate cannot be conveniently divided and parted into as many purparts as there are parties entitled thereto, to award and allot the amount or sum to be paid or secured to them respectively, and the times when such payments shall be made and the purparts out of which the same shall be payable.

And if the master shall find that the said real estate cannot be divided without prejudice to or spoiling the whole thereof, then to value and appraise the same; and if the parties refuse to take the same at the valuation and appraisement, then to apply to the court for leave to make sale thereof at public auction, giving the like notice to the parties in interest, as is required in sales under proceedings in partition at common law.

3. The disposition of the two-ninths interest in dispute shall await the conclusion of the pending equity proceedings brought for the purpose of determining said interest, and meanwhile said interest shall be set apart in kind or in the proceeds thereof.

The prothonotary will enter this decree *nisi* and give notice of the same to the parties or their counsel, and if no exceptions are filed within ten days thereafter, either party may present to the court a form of final decree then to be entered.